UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| B.R., a minor, | : | |
| by her mother and next friend, | : | |
| ULYSSA REMPSON, | : | |
| | : | |
| Plaintiffs | : | Civil Action No.: 07-0578 (RMU) |
| | : | |
| v. | : | Re Document Nos.: 51, 52, 53, 54 |
| | : | |
| DISTRICT OF COLUMBIA *et al.*, | : | |
| | : | |
| Defendants.[1] | : | |

## **MEMORANDUM OPINION**

**DENYING THE PLAINTIFFS' SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT; GRANTING DCPS'S CROSS-MOTION FOR SUMMARY JUDGMENT; DENYING THE PLAINTIFFS' MOTION FOR RELIEF UPON CLARIFICATION; GRANTING IN PART AND DENYING IN PART THE PLAINTIFFS' MOTION FOR ATTORNEY'S FEES**

## I. INTRODUCTION

The plaintiffs are B.R., a student who has learning disabilities, and her mother. They commenced this action alleging that the defendants – a public charter school in the District of Columbia and the District of Columbia Public Schools ("DCPS")[2] – failed to provide B.R. with a free appropriate public education ("FAPE") as required under the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et. seq.*

On September 29, 2010, the court granted partial summary judgment to the plaintiffs and denied DCPS's cross-motion for summary judgment. The court also ordered the parties to submit further supplemental briefing regarding whether DCPS could be held liable for the

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the court automatically substitutes Kaya Henderson, acting Chancellor of DCPS, for Michelle Rhee, the former Chancellor of DCPS. *See* FED. R. CIV. P. 25(d) (providing for the automatic substitution of a public official's successor in an official capacity suit).

[2] The plaintiffs also filed suit against the Chancellor of DCPS who joins DCPS in its supplemental motion for summary judgment. For convenience, the court refers to DCPS and the Chancellor collectively as "DCPS."

alleged IDEA violations committed by the public charter school. The parties have now filed such supplemental filings. Additionally, following a remand to an administrative hearing officer, the plaintiffs filed a motion requesting that the court clarify whether its previous partial grant of summary judgment also entitled the plaintiffs to compensation for DCPS's failure to provide extended school year services for the 2005-2006 school year. Lastly, in a separate motion, the plaintiffs also request attorney's fees.

Because, as a matter of law, DCPS cannot be held liable for the public charter school's alleged failure to evaluate B.R., the court denies the plaintiffs' supplemental motion for summary judgment and grants DCPS's supplemental cross-motion for summary judgment. Furthermore, because the court lacks subject matter jurisdiction to address whether the plaintiffs are entitled to compensation for extended school year services, the court denies the plaintiffs' request for relief upon clarification. Finally, as the plaintiffs have prevailed in their lawsuit, the court grants in part the plaintiffs' motion for attorney's fees but reduces the award by 50% to account for certain meritless claims that the plaintiffs clearly should never have asserted.

## II. BACKGROUND

### A. Factual Background[3]

B.R. attended SEED, a public charter school in the District of Columbia, from the beginning of seventh grade until May 2006, just weeks before the end of her eighth grade school year. Admin. R. at 89; Compl. ¶ 7.[4] As early as October 2004, B.R. was diagnosed with Major

---

[3] The court provided a thorough factual and procedural history in its previous Memorandum Opinion. *See generally* Mem. Op. (Sept. 29, 2010). For convenience, pertinent background information is repeated here.

[4] Although paragraph seven of the complaint indicates that B.R. attended SEED from seventh grade through ninth grade, the remainder of the plaintiffs' complaint, as well as the other filings in this case, indicate that B.R. attended SEED until a few weeks before the end of her eighth grade year. *See generally* Admin. R.; Compl.

Depressive Disorder and was briefly hospitalized. Admin R. at 132. From September 2004 to January 2005, B.R. was disciplined twenty times by school officials for behavioral issues. *Id*.

In May 2005, SEED developed B.R.'s initial Individualized Education Plan ("IEP").[5] Compl. ¶ 7. In December 2005, SEED prepared a revised IEP, which provided that B.R. spend "100%" of her time "NOT in a regular education setting" and receive two hours of social and emotional counseling per week, as well as extended school year services[6] following the 2005-2006 academic year. Admin. R. at 81, 89.

In February 2006, after receiving notice of B.R.'s proposed placement at Hart Middle School ("Hart"), a DCPS school, the plaintiffs filed an administrative due process complaint against SEED and DCPS challenging the appropriateness of that placement. Compl. ¶ 10; Admin. R. at 79-80. In May 2006, a hearing officer issued a hearing officer determination ("May 2006 HOD") concluding that Hart "can meet [B.R.'s] behavior and social emotional needs and implement her IEP." Admin. R. at 504. The hearing officer ordered that B.R. be placed at Hart, where she completed the remainder of the 2005-2006 school year. *Id*.

DCPS did not convene an IEP team meeting at the end of the 2005-2006 school year to determine an appropriate placement for B.R. for the 2006-2007 school year. Compl. ¶ 11. On August 1, 2006, B.R.'s mother sent DCPS a letter (the "August 2006 letter") stating that B.R. had not received an educational placement for the 2006-2007 school year, and after receiving no

---

[5] An IEP "sets forth, among other things, the child's present levels of academic achievement and performance, measurable annual goals and how progress toward those goals will be measured, and special education and related services to be provided." *S.S. ex rel. v. Howard Rd. Acad.,* 585 F. Supp. 2d 56, 58 (D.D.C. 2008) (citing 20 U.S.C. § 1414(d)(A)(i)).

[6] "Extended School Year" services describes "special education related services that are provided to a child with a disability i) beyond the normal school year of the public agency; ii) in accordance with the child's IEP; and iii) at no cost to the parents of the child." 34 C.F.R. § 300.106(b).

response from DCPS, B.R.'s mother unilaterally placed B.R. at High Road School, a private school. *Id.* ¶ 12.[7]

In September 2006, the plaintiffs filed a second administrative complaint against SEED and DCPS, alleging that they had failed to provide B.R. with a FAPE. *Id*. ¶ 13; Admin. R. at 12-13. Specifically, the plaintiffs alleged DCPS had failed to (1) timely identify B.R. as a child in need of special services, (2) provide B.R. with an appropriate IEP, special education and related services, (3) convene a placement meeting and make a placement decision for the 2006-2007 school year and (4) provide a FAPE for the past three years. Admin. R. at 12-13.

In the subsequent hearing officer determination ("December 2006 HOD"), the hearing officer refused to determine whether B.R. had been deprived of a FAPE while enrolled at Hart because the May 2006 HOD had already "found [that] Hart MS [was] an appropriate educational placement for the student" during the 2005-2006 school year. *Id*. at 7. The hearing officer determined not only that "DCPS made a FAPE available" to B.R. for the 2006-2007 school year, but also that B.R.'s mother was not entitled to private school tuition reimbursement because the August 2006 letter failed to specify that "the [p]arent expected DCPS to pay for the cost of the student's education" at the private school and the administrative complaint did not specify reimbursement as relief. *Id.*

### B. Procedural History

The plaintiffs commenced this action in March 2007, alleging violations of the IDEA, the Rehabilitation Act of 1973, 29 U.S.C. § 794, and 42 U.S.C. § 1983. *See generally* Compl. With respect to the alleged IDEA violations, the plaintiffs claimed that SEED and DCPS failed to

---

[7] Paragraph twelve of the complaint is incorrectly numbered as paragraph eight, resulting in the incorrect numeration of the remainder of the document. *See generally* Compl. The court, therefore, ignores the complaint's numbering and refers to the paragraphs based on sequential numbering.

provide B.R. with a FAPE and "appropriate special education and related services," including appropriate evaluations. *Id.* ¶¶ 17-27. In addition to seeking compensatory education for B.R. from DCPS and SEED due to their denial of her FAPE, the plaintiffs also sought tuition reimbursement from DCPS for B.R.'s placement at High Road for the 2006-2007 school year. *Id.* at ¶ 36.

In August 2007, DCPS filed a motion to dismiss the plaintiffs' § 1983 and Rehabilitation Act claims. *See generally* DCPS Mot. to Dismiss. The court granted DCPS's motion and dismissed both claims as to DCPS. *See generally* Mem Op. (Dec. 3, 2007).

In September 2009, SEED filed a motion to dismiss the claims against it for insufficient service of process. *See generally* SEED's Mot. to Dismiss. Additionally, the plaintiffs and DCPS filed cross-motions for summary judgment. *See generally* Pls.' Mot. for Summ. J.; DCPS's Cross-Mot. for Summ. J.

In September 2010, the court granted SEED's motion to dismiss for insufficient service, granted in part and denied in part the plaintiffs' motion for summary judgment and denied DCPS's cross-motion for summary judgment. *See generally* Mem. Op. (Sept. 29, 2010). The court also granted the plaintiffs leave to file a motion requesting attorney's fees. *Id.* at 27. Furthermore, because the December 2006 HOD did not address whether DCPS could be held liable for SEED's failure to perform evaluations of B.R., and because DCPS did not address those allegations in its briefs, the court ordered the parties to provide supplemental briefing on whether DCPS could be held liable for IDEA infractions allegedly committed by SEED. *Id.* at 16.

Because the court determined that DCPS had denied B.R. a FAPE when it placed her at Hart for the end of the 2005-2006 academic year, it remanded the case to a hearing officer to

5

determine an appropriate compensatory award for B.R. *Id*. at 28. The court also directed the hearing officer to determine whether High Road was an appropriate placement for B.R. during the 2006-2007 school year, and, if it was an appropriate placement, to require that DCPS reimburse the plaintiffs for B.R.'s private school tuition for that school year. *Id.* at 26.

On remand, the hearing officer concluded that B.R. should be awarded thirty hours of independent tutoring as compensatory education for the improper placement of B.R. at Hart. Pls' Mot. for Relief Upon Clarification, Ex. 2 ("Dec. 2010 HOD") at 11. The hearing officer also determined that although High Road was an appropriate placement for the 2006-2007 academic year, no reimbursement was due to the plaintiffs because it was DCPS and not B.R.'s mother that had paid the private school tuition. *Id.*

At the remand hearing, the plaintiffs also, for the first time, sought sixty hours of compensatory education for DCPS's alleged failure to provide B.R. with extended school year services following the 2005-2006 academic year. *Id.* at 10. The hearing officer declined to issue such relief, however, because the remand order from this court had not directed the hearing officer to consider whether B.R. missed additional services not addressed in the court's 2010 Memorandum Opinion. *See id.* at 11.

The plaintiffs have now filed a motion for relief upon clarification, seeking compensation for missed extended school year services related to the 2005-2006 school year. *See* Pls' Mot. for Relief Upon Clarification at 1 ("Pls.' Mot. for Relief"). The parties have also filed their supplemental motions for summary judgment concerning whether DCPS could be held liable for IDEA infractions allegedly committed by SEED. *See generally* Pl.'s Suppl. Mot.; Def.'s Suppl. Cross-Mot. Lastly, the plaintiffs filed a motion seeking attorney's fees. *See generally* Pl.s' Mot.

for Att'y's Fees. With these issues ripe for adjudication, the court now turns to the applicable legal standards and the parties' arguments.

## III. ANALYSIS

### A. The Court Grants DCPS's Cross-Motion for Summary Judgment and Denies the Plaintiffs' Motion for Summary Judgment

#### 1. Legal Standard for Summary Judgment

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on cross-motions for summary judgment, the court shall grant summary judgment only if one of the parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed. *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 658 F. Supp. 2d 217, 224 (D.D.C. 2009) (citing *Rhoads v. McFerran*, 517 F.2d 66, 67 (2d Cir. 1975)). To prevail on a motion for summary judgment, the moving party must show that the opposing party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the opposing party, a moving party may succeed on summary judgment. *Id.*

The opposing party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v.*

7

*Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006).

**2. DCPS Is Not Liable for SEED's Allegedly Improper and Untimely Evaluations of B.R.**

The plaintiffs contend that DCPS violated the IDEA "when [it] failed to locate, identify, and evaluate B.R." Pls.' Supp'l Mot. at 9. According to the plaintiffs, B.R.'s psychiatric hospitalization in 2004 and her "numerous behavior problems" that began in 2004 should have triggered an evaluation much sooner than the May 2005 IEP. *Id.* at 6. The plaintiffs argue that although DCPS assumed the role of the State Education Agency ("SEA") and its responsibilities were therefore "primarily supervisory," DCPS is ultimately liable for any failure to "identify, locate, and evaluate students within their school system." *Id.* at 2.

DCPS counters that it cannot be held responsible for SEED's alleged failure to conduct a timely evaluation of B.R. because SEED, as a public charter school, was independently responsible for providing B.R. with a FAPE. Def.'s Supp'l Cross-Mot. at 3. DCPS asserts that it can only be held liable for a public charter school's violation of the IDEA if a hearing officer requires DCPS to implement a hearing officer determination or if the public charter school appeals to DCPS for assistance. *Id.* Because neither of these events occurred, DCPS contends that it cannot be held responsible for IDEA violations committed by SEED. *Id.* at 3-4.

Under the IDEA, school officials have an affirmative duty to locate and evaluate children within their school system suffering from disabilities, an obligation known as the "child find" duty. 20 U.S.C. § 1412(a)(3); *see also Reid v. District of Columbia*, 310 F. Supp. 2d 137, 146 (D.D.C. 2004), *rev'd on other grounds*, 401 F.3d 516 (D.C. Cir. 2005). This obligation arises as soon as a child is suspected of having a disability. *N.G. v. District of Columbia*, 556 F. Supp. 2d

11, 25 (D.D.C. 2008). Thus, "as soon as a student is identified as a potential candidate for special education services," school officials have a duty to initiate and complete the evaluation process within 120 days. *Id*; *see also*, 34 C.F.R. § 300.301; D.C. CODE § 38-2561.02.

As this court recently noted in another IDEA action, "[i]n the District of Columbia, Public Charter Schools must elect to be treated as [a Local Education Agency ("LEA")][8] or a D.C. public school . . . for purposes of the IDEA." *Thomas v. District of Columbia*, 2011 WL 1120104, at *5 (D.D.C. Mar. 29, 2011) (quoting *IDEA Public Charter School v. Belton*, 2006 WL 667072, at *2 (D.D.C. Mar. 15, 2006)); *see also*, D.C. CODE § 38-1802.10(c); D.C. MUN. REGS tit. 5, § 3019.2. An LEA charter school is an independent entity for the purpose of ensuring compliance with the IDEA and is required to provide special education to the disabled children enrolled at its facilities. *Friendship Edison Pub. Charter Sch. Collegiate Campus v. Murphy*, 448 F. Supp. 2d. 166, 169 (citing D.C. MUN. REGS. tit. 5, §§ 3019.3, 3019.8).

For a public charter school in the District of Columbia acting as its own LEA, DCPS serves as the SEA. 20 U.S.C. §§ 1400 *et seq*. D.C. MUN. REGS. tit. 5, § 3019.4. The SEA typically oversees a school's compliance with the IDEA. D.C. MUN. REGS. tit. 5, § 3019.4. The SEA may only be held responsible for developing and implementing a FAPE, however, if an LEA previously notified the SEA that it was unwilling or unable to provide a FAPE to a child, and the SEA agreed to assume responsibility, or if a hearing officer directed the SEA to provide the child with an FAPE. *See Belton*, 2006 WL 667072, at *2; *see also Murphy*, 448 F. Supp. 2d.

---

[8] An LEA is statutorily defined as

> a public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools in a city, county, township, school district, or other political subdivision of a State, or for such combination of school districts or counties as are recognized in a State as an administrative agency for its public elementary schools or secondary schools.

20 U.S.C. § 1401(19)(A).

9

at 169-70 (granting DCPS's motion to dismiss and ruling that the LEA charter school "retained responsibility for providing a FAPE" because the LEA charter did not notify DCPS that it needed assistance and DCPS did not agree to assume responsibility).

Both parties agree that SEED, as a public charter school, was acting as an LEA and that DCPS had assumed the role of the SEA for purposes of administering the IDEA. *See* Pls.' Supp'l Mot. at 2; Def.'s Supp'l Cross-Mot. at 2. Thus, even assuming that SEED violated its child find obligations, DCPS can only be held liable if SEED requested DCPS's assistance in executing its IDEA responsibilities or if a hearing officer directed DCPS to provide a FAPE for B.R. while she was attending SEED. *See Murphy*, 448 F. Supp. 2d. at 170. The plaintiffs do not allege that SEED requested assistance or that a hearing officer ordered DCPS to provide a FAPE to B.R. *See generally* Pls.' Supp'l Mot. Accordingly, the court concludes that DCPS cannot be held liable for any violations of the child find requirement allegedly committed by SEED and grants DCPS's cross-motion on this issue.

### B. The Court Denies the Plaintiffs' Motion for Relief Upon Clarification

As discussed above, the plaintiffs seek clarification from the court regarding their entitlement to compensation for B.R.'s extended school year services. Pls.' Mot. for Relief. More specifically, the plaintiffs claim that extended school year services were included in B.R.'s December 2005 IEP and should have therefore been provided to B.R. during the summer following the 2005-2006 school year. *Id*. at 2; Admin. R. at 81. The plaintiffs further argue that the December 2010 HOD should have included compensation for extended school year services "because [these services are] an extension of the regular school year." Pls' Mot. for Relief at 2.

DCPS argues that this court lacks jurisdiction to hear this issue because the plaintiffs have not exhausted their administrative remedies. Def.'s Opp'n to Pls.' Mot. for Relief at 2.

10

DCPS further argues that the IDEA's administrative framework requires a plaintiff to first request compensatory education related to extended school year services directly from the LEA. *Id.*

After this court's order granting partial summary judgment to the plaintiffs, this case was remanded to a hearing officer who determined that B.R. should have indeed been provided extended school year services for the 2005-2006 school year pursuant to her 2005 IEP. Dec. 2010 HOD at 10. Although B.R. never received these services, the hearing officer declined to compensate B.R. because this court did not mention extended school year services in its remand order and the court "did not direct the hearing officer to consider whether [B.R. had] missed additional services not mentioned in the court's [September 29, 2010] memorandum and order." *Id.* at 10-11.

The administrative process set forth by IDEA is not "just an optional stop on the way to court." *Andersen by Andersen v. District of Columbia*, 877 F.2d 1018, 1025 (D.C. Cir. 1989). Rather, the IDEA requires a plaintiff to exhaust administrative remedies before turning to the courts. *Cox v. Jenkins*, 878 F.2d 414, 418 (D.C. Cir. 1989). As the Circuit has pointed out,

> [t]he exhaustion doctrine serves several important purposes: it prevents courts from interrupting the administrative process permanently; it allows the agency to apply its specialized expertise to the problem; it gives the agency an opportunity to correct its own errors; it ensures that there will be a complete factual record for the court to review; and it prevents the parties from undermining the agency by deliberately flouting the administrative process.

*Id.* at 419. A plaintiff's failure to exhaust administrative remedies, moreover, deprives the court of its authority to hear an IDEA claim. 20 U.S.C. § 1415(c), (e); *Cox*, 878 F.2d at 422 (concluding that the district court "had no authority to hear" a suit in which the plaintiffs had not fully exhausted the administrative process); *Lemon v. District of Columbia*, 920 F. Supp. 8, 10 (D.D.C. 1996) (stating that exhaustion "is a jurisdictional prerequisite to any claim for judicial

relief arising out of the IDEA").

As the hearing officer recognized, B.R.'s 2005 IEP clearly prescribed extended school year services. Admin. R. at 81; Dec. 2010 HOD at 10. Nevertheless, the plaintiffs did not raise this issue in their September 2006 administrative complaint against DCPS. *See* Dec. 2010 HOD at 5-6. Nor did the plaintiffs ever request compensation for the missed extended school year services in their complaint or in their motion for summary judgment before this court. *See generally*, Compl.; Pls.' Mot. for Summ. J. Thus, it appears that beyond the plaintiffs' broad allegation that DCPS failed to provide B.R. with a FAPE during the 2005-2006 school year, the plaintiffs have never litigated B.R.'s extended school year services. *See* Pls.' Mot. for Summ. J. at 11-15. Because the plaintiffs failed to exhaust their administrative remedies, the court lacks jurisdiction to grant compensatory relief for extended school year services. *See Cox*, 878 F.2d at 418. Accordingly, the court denies the plaintiffs' motion for relief upon clarification.

**C. The Court Grants in Part and Denies in Part Plaintiffs' Motion for Attorney's Fees**

**1. Legal Standard for Attorney's Fees and Costs Under IDEA**

The IDEA allows the parents of a disabled child to recover "reasonable attorney's fees" so long as they are the "prevailing party." 20 U.S.C. § 1415(i)(3)(B). A court's determination of the appropriate attorney's fees, in other words, is based on a two-step inquiry. First, the court must determine whether the party seeking attorney's fees is the prevailing party. *Id.* A prevailing party "is one who has been awarded some relief by a court." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001); *Alegria v. District of Columbia*, 391 F.3d 262, 264-65 (D.C. Cir. 2004) (applying *Buckhannon* in the IDEA context).

Second, the court must determine whether the attorney's fees sought are reasonable. 20

U.S.C. § 1415(i)(3)(B). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Blackman v. District of Columbia*, 397 F. Supp. 2d 12, 14 (D.D.C. 2005) (applying *Hensley* in the IDEA context). The plaintiff bears the burden of demonstrating that the number of hours spent on a particular task is reasonable. *Holbrook v. District of Columbia*, 305 F. Supp. 2d 41, 45 (D.D.C. 2004). The plaintiff may satisfy this burden "by submitting an invoice that is sufficiently detailed to 'permit the District Court to make an independent determination [of] whether or not the hours claimed are justified.'" *Id.* (citing *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982)).

"Once the plaintiff has provided such information, a presumption arises that the number of hours billed is reasonable and the burden shifts to the defendants to rebut the plaintiff's showing of reasonable hours." *Herbin*, 2006 WL 890673, at *5. With respect to the reasonable hourly rate, attorney's fees in IDEA actions in the District of Columbia are reasonable if they conform to the *Laffey* Matrix created by the United States Attorneys' Office.[9] *Lopez v. District of Columbia*, 383 F. Supp. 2d 18, 24 (D.D.C. 2005) (citing *Kaseman v. District of Columbia*, 329 F. Supp. 2d 20, 25 (D.D.C. 2004)); *see also* 20 U.S.C. § 1415(i)(3)(C) (stating that attorney's fees awards "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished").

---

[9] The *Laffey* Matrix is "a schedule of charges based on years of [an attorney's] experience." *Herbin v. District of Columbia*, 2006 WL 890673, at *4 (D.D.C. Apr. 4, 2006); *see also Laffey Matrix 2003-2010*, http://www.justice.gov/usao/dc/divisions/civil_laffey_matrix_8.html (last visited June 17, 2011).

## 2. The *Laffey* Matrix is the Proper Means to Determine Fee Awards

The plaintiffs seek a rate of $350/hour for Attorney Samuel Adewusi and $200/hour for Attorney Jude Iweanoge.[10] *See* Pls.' Mot. for Att'y's Fees, Ex. 2, Ex. 4. Multiplying these rates by the number of hours these attorneys "reasonably worked," the plaintiffs calculate a requested award of $19,396.50 for Attorney Adewusi and $4,686.00 for Attorney Iweanoge. Pls.' Mot. for Att'y's Fees at 2-3.

DCPS argues that the *Laffey* Matrix is not applicable to "uncomplicated" IDEA cases, such as the present case. Def.'s Opp'n to Pls.' Mot. for Att'y's Fees at 9. Instead, DCPS seeks to apply a lower standard rate of payment that DCPS routinely applies in IDEA-related matters. *Id.* at 8-9. More specifically, DCPS seeks a reduction to $200/hour for the law office of Adewusi and $150/hour for Attorney Iweanoge. *Id.*

Courts in this district routinely refer to the *Laffey* Matrix to determine the reasonableness of requested attorney's fees in IDEA actions. *See, e.g.*, *Bucher v. District of Columbia*, 2011 WL 1356761, at *4 (D.D.C. April 11, 2011) (holding that the *Laffey* Matrix is to be used to determine reasonable rates for attorney's fees in an IDEA action); *Bush ex rel. A.H. v. District of Columbia,* 579 F. Supp. 2d 22, 26-27 (D.D.C. 2008) (same); *Alfonso v. District of Columbia,* 464 F. Supp. 2d 1, 6-7 (D.D.C. 2006) (same). As the *Laffey* Matrix represents the prevailing rates for attorneys in the District of Columbia, the court appropriately uses it as a guide to determine a reasonable attorney's fee award. *See Lopez*, 383 F. Supp. 2d at 24. The rates requested by the

---

[10] The plaintiffs represent that one of their attorneys, Attorney Christopher Anwah, was prevented from submitting his invoices due to an "unexpected technical problem." Pls.' Mot. for Att'y's Fees at 4. In the five months since the plaintiffs made this representation, they have neither filed nor sought leave to file any further information regarding Anwah's fees. As the Circuit has indicated, a party's request for attorney's fees "must also contain sufficiently detailed information about the hours logged and the work done." *See Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982). The court declines to award Attorney Anwah any fees as there has been no supplemental submission in over five months.

14

plaintiffs' attorneys fall below the applicable *Laffey* rate for their experience and are therefore reasonable. *See* Pls.' Mot. for Att'y's Fees at 5; *Laffey Matrix 2003-2010*, http://www.justice.gov/usao/dc/divisions/civil_laffey_matrix_8.html (last visited June 17, 2011); *see also Bucher*, 2011 WL 1356761, at *4. Accordingly, the court accepts the plaintiffs' proposed rates and calculations in determining fee awards in this case.

### 3. The Court Reduces the Plaintiffs' Fee Award

DCPS argues that the plaintiffs' fee motion request should be denied because the plaintiffs are not the prevailing party under the IDEA. Def.'s Opp'n to Pls.' Mot. for Att'y's Fees at 6. Specifically, DCPS contends that the "primary issue of the underlying administrative action" – the private school tuition reimbursement for 2006-2007 – should never have been brought before this court because DCPS had directly paid B.R.'s private school tuition bill. *Id.* Therefore, the DCPS argues, the plaintiffs should not recover attorney's fees because DCPS prevailed in large part on this moot issue. *Id.* In the alternative, DCPS argues that the plaintiffs are only entitled to 50% of the requested fee because the court only partially granted the plaintiffs' motion for summary judgment. *Id.*; *see also* Mem. Op. (Sept. 29, 2010) at 9-22.[11]

The plaintiffs assert that they prevailed on at least one legal issue because this court granted them leave to file a motion for attorney's fees after determining that B.R. was denied a FAPE during the 2005-2006 school year. Pls.' Reply to Def.'s Opp'n to Pls.' Mot. for Att'y's Fees at 5; *see also* Mem. Op. (Sept. 29, 2010) at 18.

Courts have routinely held that a court "may reduce [an attorney's fees] award to account

---

[11] DCPS also alleges that the plaintiffs failed to comply with Local Civil Rule 7(m)'s "meet and confer" requirement when it neglected to ask DCPS for its position on the plaintiffs' motion for attorney's fees. Def.'s Opp'n to Pls.' Mot. for Att'y's Fees at 3. Local Civil Rule 7(m)'s meet and confer requirement, however, does not normally apply to a party's motion for statutory attorney's fees. *Tripoli Rocketry Ass'n v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 698 F. Supp. 2d 168, 173 (D.D.C. 2010); *David v. District of Columbia*, 252 F.R.D. 56, 58-59 (D.D.C. 2010). Accordingly, the court will not deny the plaintiffs' motion on these grounds.

for [a party's] limited success." *Hensley,* 461 U.S. at 437 (establishing the "degree of success" standard in fee shifting statutes); *see also, e.g.*, *Lopez v. District of Columbia*, 383 F. Supp. 2d 18, 22-23 (D.D.C. 2005) (applying *Hensley* in IDEA case and reducing fee award for partial success); *Aguirre v. L.A. Unified Sch. Dist.*, 461 F.3d 1114, 1118-19 (9th Cir. 2006) (holding the "degree of success" standard conforms to "[t]he legislative history for IDEA's fee-shifting provisions"). Here, the plaintiffs have prevailed because, as discussed in the court's previous memorandum opinion, they established that B.R. did not receive a FAPE during the 2005-2006 academic year, and, as a result, the plaintiffs received a compensatory education award. *See* Mem. Op. (Sept. 29, 2010) at 18; Dec. 2010 HOD at 11; *see also Buckhannon*, 532 U.S. at 603 (noting that "a 'prevailing party' is one who has been awarded some relief by the court"). The court notes, however, that the plaintiffs should never have brought a claim for tuition reimbursement for the 2006-2007 school year because the plaintiffs had never paid private school tuition at High Road. *See* Dec. 2010 HOD at 7. Consequently, the court further reduces the plaintiffs' attorney's fee request by 50% based on the plaintiffs' degree of success and the fact that the plaintiffs brought this unnecessary claim, which accounted for a large part of the plaintiffs' IDEA action. *See Lopez*, 383 F. Supp. 2d at 22-23.

As a final note, the court acknowledges that the District of Columbia applies a $4,000 statutory cap for attorney's fees in IDEA cases initiated prior to 2009. *See* Pub L. No. 111-8, 123 Stat. 524 (2009). Although the D.C. Appropriation Act of 2009 removed the cap on future

IDEA attorney's fees, the $4,000 limit still applies for any action commenced before 2009.[12] *See id*. Because this case was initiated prior to 2009, the cap still applies. *See Herbin*, 2006 WL 890673, at *2. The court "cannot order [DCPS] to violate an act of Congress to pay the total award." *Scorah v. District of Columbia*, Civ. No. 03-0160, (D.D.C. Dec. 17, 2004) (Mem. Op.). Nevertheless, the court may award attorney's fees and costs greater than the $4,000 amount with the understanding that the fee cap limits DCPS's authority to pay the full award. *Calloway v. District of Columbia*, 216 F.3d 1, 3 (D.C. Cir. 2000). Accordingly, the court grants the plaintiffs an award of $9,698.25 for Attorney Adewusi and $2,343.00 for Attorney Iweanoge.

## IV. CONCLUSION

For the foregoing reasons the court denies the plaintiffs' supplemental motion for summary judgment and grants the DCPS's supplemental cross-motion for summary judgment. The court further denies the plaintiffs' motion for relief upon clarification of the court's September 2010 decision. Finally, the court grants in part and denies in part the plaintiffs' motion for attorney's fees. An Order consistent with the Memorandum Opinion is separately and contemporaneously filed this 12th day of August, 2011.

RICARDO M. URBINA
United States District Judge

---

[12] The plaintiffs' counsel, Samuel Adewusi, argues that he should be permitted to recover fees for billings commenced after the fee cap was lifted. Pls.' Mot. for Atty's' Fees at 6. The D.C. Appropriations Act of 2009 holds, however, that fees cannot be recovered for any "proceeding which was initiated prior" to 2009. Pub. L. No. 111-8, 123 Stat. 524 §814(a)-(b) (2009). Thus, even assuming that Mr. Adewusi conducted the bulk of his work on this case after the fee cap was lifted, the court concludes that he is limited by the statutory cap because this action was originally commenced well before 2009.